

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2008

# Rosalinda v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4122

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Rosalinda v. Atty Gen USA" (2008). *2008 Decisions.* Paper 346.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/346

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4122

ROSALINDA and BENY DHARMAWAN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A95-377-286; A95-377-287)
Immigration Judge:  Honorable R. K. Malloy

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 15, 2008

Before: AMBRO, FISHER and JORDAN, Circuit Judges

(Opinion filed October 20, 2008)

OPINION

PER CURIAM

Petitioners seek review of the Board of Immigration Appeals' ("BIA") order

dismissing their appeal from the Immigration Judge's ("IJ") order of removal.  For the

following reasons, we will deny the petition for review.

Rosalinda, a native and citizen of Indonesia, entered the United States on February 4, 2001, as a non-immigrant visitor.[1]  One year later, on February 4, 2002, she filed an affirmative application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Rosalinda's application named her husband, Beny Dharmawan, as a derivative beneficiary.

In her application, Rosalinda claimed that she had been persecuted in Indonesia on account of her imputed Chinese ethnicity and Christian religion.  Rosalinda recounted two specific incidents in support of her application.  First, during a riot in May of 1998, a group of men arrived at her home, beat her and her family, and looted the house.  According to Rosalinda, the assailants were targeting Chinese families, and, although she "is not of Chinese origin," she looks Chinese.  (A.R. 000269.)  Rosalinda stated that another incident took place the following October.  According to Rosalinda, she and her family were on a motor scooter on their way to church when hundreds of masked men appeared and stopped them from attending church.  The men attacked her husband and stole the motor scooter.  Rosalinda explained in her statement that she tried to escape the violence by moving her family to a different island, but found that "the situation there was exactly the same," and eventually left for the United States.  (A.R. 000270.)

In March 2002, an asylum officer interviewed Rosalinda to assess her claim.

---

[1]Rosalinda's last name is unknown.

According to the Assessment Report, Rosalinda stated during the interview that "although she is mostly Malay, she is part Chinese through a distant relative on her mother's side, and that in times of tension, Indonesians see that part of her heritage." (A.R. 000349.) Rosalinda also recounted the incidents in May and October 1998 and told the asylum officer that she was afraid to return to Indonesia because "she fears that more incidents like this could happen to her." (A.R. 000350.) Following the interview, the asylum officer referred Rosalinda's case to an immigration judge.

On November 15, 2005, the Petitioners appeared for a removal hearing before IJ R. K. Malloy. At the hearing, Rosalinda testified that she is Malay but that her mother is Chinese. (A.R. 000198.) IJ Malloy pointed out that, in Rosalinda's affidavit in support of her application, she had stated that a more distant relative was Chinese. (A.R. 000199.) Rosalinda then clarified that her mother was, in fact, 100 percent Chinese. (Id.) Later in the hearing, however, Rosalinda stated that her "grandmother is Chinese, but [her] mom is only got some [sic] Chinese descendants." (A.R. 000227.) IJ Malloy then replayed her earlier testimony that her mother was 100 percent Chinese. (A.R. 000228.) Despite being confronted with this inconsistency, Rosalinda nonetheless insisted that her previous testimony was that her mother's ethnicity was "mixed." (A.R. 000229-231.)

Rosalinda proceeded to testify about the two 1998 incidents described in her application. In addition, Rosalinda told the court that she had been attacked on two other occasions. Rosalinda explained that, in 1992, she had married a Christian man and

3

converted to Christianity. (A.R. 000202-205.) As a result, her family had disowned her. (Id.) Sometime later that year, while she was six months pregnant with her first child, her family sent three men to her home to threaten her. (A.R. 000206.) According to Rosalinda, the men hit her on her head and shoulders and called her an infidel. (Id.) Rosalinda testified that several months later, her family sent a second group of men to threaten her. That time, four men entered her house, removed her one-week-old baby from her arms and placed him on the couch, beat Rosalinda, and called her an "infidel woman." (A.R. 000208.) After these two incidents, Rosalinda, her husband, and her baby moved twice, but continued to receive threatening phone calls from her family. (A.R. 000210-212.) On cross-examination, the government asked Rosalinda why she failed to mention anything about these attacks, or her problems with her family, in her original application.[2] (A.R. 000236.) In response, Rosalinda explained that a friend had helped her translate her statement, and that her friend was in a hurry. (A.R. 000236-237.)

Following the hearing, IJ Malloy found Rosalinda's testimony incredible and denied relief. The IJ further found that, even assuming that Rosalinda were credible, the incidents she described do not rise to the level of persecution. Upon review, the BIA found no clear error in the IJ's adverse credibility determination, and, on that basis, affirmed the IJ's denial of Petitioners' applications for asylum, withholding of removal, and protection under the CAT. The BIA did not address IJ Malloy's alternative basis for

---

[2]Rosalinda submitted a revised I-589 in October 2004 that included an account of these incidents.

denying relief.  The present petition for review followed.

## II.

We have jurisdiction to review the BIA's order of removal under 8 U.S.C. § 1252(a)(1).  When, as in this case, the BIA substantially relies on the findings of the IJ, we review the decisions of both the BIA and the IJ.  See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).  We review these findings, including any credibility determinations, under a substantial evidence standard.[3]  See Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005).  An adverse credibility finding must be afforded substantial deference, so long as the finding is supported by sufficient, cogent reasons.  See Butt v. Gonzales, 429 F.3d 430, 434 (3d Cir. 2005).  The Court must evaluate whether the credibility determination was "appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions."  Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004).

Upon review, we are satisfied that substantial evidence supports the BIA's decision affirming the IJ's adverse credibility determination.  A review of the record reveals significant inconsistencies in Rosalinda's story.  First, it appears that Rosalinda gave four different accounts of her ethnic heritage.  Although she stated in her original asylum application that she is "not of Chinese origin" but does look Chinese, she told the

---

[3]The provisions of the Real ID Act concerning the Court's review of an adverse credibility finding do not apply because Rosalinda filed her application for asylum before the Act's effective date.  See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007).

asylum officer at her assessment interview that she is part Chinese through a distant relative on her mother's side. Then, at the removal hearing, she initially testified that her mother is 100 percent Chinese, but later claimed that her mother is "mixed" and her grandmother is Chinese. When confronted with the discrepancy in her testimony, Rosalinda insisted that she never said her mother is Chinese even though IJ Malloy played the tape of her previous testimony back to her. In addition to the inconsistent account of her ethnicity, Rosalinda also failed to include in her original application that she was, on two separate occasions, attacked in her home by men whom her family sent to harm her. When given an opportunity to explain this significant omission, Rosalinda stated only that the friend who had helped her with her application was in a hurry. While Rosalinda argues on appeal that she provided convincing explanations for these inconsistencies and omissions, we cannot conclude that "any reasonable adjudicator" would feel compelled to accept those explanations. See 8 U.S.C. § 1252(b)(4)(B).

In sum, given that the BIA's and IJ's adverse credibility determinations are supported by sufficient, cogent reasons, we will defer to their findings. See Butt, 429 F.3d at 434. We therefore agree that Rosalinda failed to establish eligibility for asylum on the basis of past persecution, and that nothing in the record demonstrates that she has a well-founded fear of future persecution. See 8 U.S.C. § 1101(a)(42)(A); Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006). Furthermore, because Rosalinda's claims for withholding of removal and relief under the CAT are based on the same evidence as her asylum claim, we conclude that substantial evidence supports the denial of these

6

claims as well.

## III.

Accordingly, for the reasons set forth above, we will deny the petition for review.